19

FILED

JAN 2 0 2010

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

## NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| In re | Case No.  07-11278-B-7 |
| Philip R. Castiglione, | |
| Debtor. | |
| | |
| James Salven, as Chapter 7 Trustee for the Estate of Philip R. Castiglione, | Adversary Proc. No. 08-1218 |
| | DC No. DRJ-2 |
| Plaintiff, | |
| v. | |
| Mister C Investment Corporation, Inc., a California Corporation, Deville Enterprises, a California Corporation Philip R. Castiglione, Sean Castiglione, Michael Castiglione, and Krista Castiglione, | |
| Defendants. | |

## MEMORANDUM DECISION REGARDING MOTION
## TO DISMISS FIRST AMENDED COMPLAINT

This disposition is not appropriate for publication.  Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value.  See 9th Cir. BAP Rule 8013-1.

39

1   David R. Jenkins, Esq., appeared on behalf of the defendants, Mister C Investment
2   Corporation, Deville Enterprises, Sean Castiglione, Michael Castiglione, and Krista
    Castiglione (the "Mr. C Defendants").

3   Jeff Reich, Esq., appeared on behalf of the chapter 7 trustee and plaintiff, James
4   Salven (the "Trustee").

5   Daniel A. Bruce, Esq., appeared on behalf of the debtor and defendant, Philip R.
    Castiglione (the "Debtor").

6        Before the court is the Mr. C Defendants' motion for an order dismissing the

7   Trustee's first amended complaint (the "Complaint") for failure to state a claim for

8   relief (the "Motion"). The Motion presents two issues which would significantly

9   limit the scope of this adversary proceeding: (1) The Trustee's ability to capture the

10  assets of the corporate defendant for the benefit of the bankruptcy estate using

11  California's "alter ego" and "reverse piercing" doctrines; and (2) The statute of

12  limitations applicable to a bankruptcy trustee who wishes to prosecute a claim under

13  California's Uniform Fraudulent Transfer Act. For the reasons set forth below, the

14  Mr. C Defendants' Motion will be granted with prejudice as to the "alter ego" and

15  "reverse piercing" claims and the claims for relief derived therefrom. The Motion

16  will be granted with leave to amend as to the fraudulent transfer claim.

17       This memorandum decision contains the court's findings of fact and

18  conclusions of law required by Federal Rule of Civil Procedure 52(a), made

19  applicable to this contested matter by Federal Rule of Bankruptcy Procedure 7052.

20  The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, 11 U.S.C.

21  §§ 544 & 548,[1] and General Orders 182 and 330 of the U.S. District Court for the

22  Eastern District of California. This is a core proceeding as defined in 28 U.S.C.

23  subsections 157(b)(2)(H) & (O).

24  _____

25       [1]Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy
    Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-
26  9036, as enacted and promulgated *after* October 17, 2005, the effective date of The Bankruptcy
    Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat.
27  23.

28

1  **Standard of Review.**

2       This Motion is brought under Fed. Rule of Civ. P. 12(b)(6) (made applicable

3  to this adversary proceeding by Fed. Rule of Bankr. P. 7012(b)).  A motion under

4  Rule 12(b)(6) allows the defendant to challenge the formal sufficiency of the

5  complaint.  *See Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th

6  Cir. 1987).  When considering a Rule 12(b)(6) motion to dismiss for failure to state

7  a claim, the complaint should be construed in a light most favorable to the

8  nonmoving party and all allegations of material fact must be taken as true.  *See*

9  *Busseto Foods, Inc. v. Laizure (In re Laizure)*, 349 B.R. 604, 606 (9th Cir. BAP

10  2006).  "A complaint should not be dismissed under Rule 12(b)(6) 'unless it appears

11  beyond doubt that the plaintiff can prove no set of facts in support of his claim

12  which would entitle him to relief.' " *Balistreri v. Pacifica Police Dept.*, 901 F.2d

13  696, 699 (9th Cir. 1990), *quoting Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99,

14  101-02 (1957).  However, a dismissal is proper where the complaint fails to state

15  either a "cognizable legal theory" or "sufficient facts alleged under a cognizable

16  legal theory." *Balistreri*, 901 F.2d at 699.  A complaint may be dismissed without

17  leave to amend where it appears from the pleadings that further amendment would

18  be futile.  *Rutman Wine Co.*, 89 F.2d at 738.

19       In reviewing the Complaint, the court need not accept as true unwarranted

20  deductions of fact, legal characterizations, nor conclusory allegations or

21  unreasonable inferences.  *See Western Mining Council v. Watt*, 643 F.2d 618, 624

22  (9th Cir. 1981).  The court may consider documents and facts which are subject to

23  judicial notice.  The court may not consider extrinsic facts, or make findings of fact

24  that are unsupported in the record.  The following background summary is taken

25  from allegations in the Complaint, which the court will accept as true, and from the

26  record in this bankruptcy case, which is subject to judicial notice.

27  **Background.**

28       In or about 1986, the Debtor was under federal indictment for tax evasion

3

1    and crop insurance fraud. On the advice of his legal counsel, the Debtor created a

2    corporation, defendant Mr. C Investment (now known as Deville Enterprises;

3    hereafter the "Corporation"). The Trustee acknowledges that the Corporation is a

4    "California Corporation." (Complaint, ¶¶ 7 & 8.) However, he contends that the

5    Corporation is a sham, and that the Debtor formed the Corporation "as a shelter for

6    his funds and his business dealings and as a vehicle for conducting his personal

7    affairs." (Complaint, ¶ 15.)

8        The shares of stock in the Corporation were issued to a trust, which was also

9    created by the Debtor pursuant to an Agreement dated January 22, 1986 (the

10    "Trust"), for the benefit of the Debtor's three minor children, defendants Sean,

11    Michael, and Krista Castiglione (the "Defendant Children"). The Trust is not a

12    defendant in this adversary proceeding. However, the Trustee contends that the

13    Trust is also a sham. In an ambiguous and internally contradictory passage, the

14    Trustee alleges:

15        [T]he debtor did not effectively place the shares [of the
        Corporation] in the trust, or, in the alternative, if said shares
16        were placed in a trust, said trust was simply a sham and alter
        ego of the debtor as alleged herein, or, in the alternative, if said
17        shares were effectively conveyed to a trust or third parties,
        said transfer constituted a fraudulent conveyance as alleged
18        herein. . . . Debtor treated the trust as his own with the consent
        of all involved . . . . (Complaint, ¶ 15.)
19

20        From 1986 to 2006, the Debtor conducted virtually all of his business affairs

21    through the Corporation generating profits and assets in the Corporation worth

22    between $6 and $8 million. In 1987, Bank of America foreclosed on the Debtor's

23    ranch properties. However, the Bank allowed the Debtor, through the Corporation,

24    to lease back the ranch properties and he successfully farmed those properties for

25    the benefit of the Corporation. (Complaint, ¶ 17.) Through the Corporation, the

26    Debtor expanded his farming operations, leasing additional foreclosed properties

27    from other banks. The Corporation eventually purchased some of the leased

28    properties and began developing them for residential purposes. (Complaint, ¶ 18.)

4

The Debtor initially contributed between $6,000 and $10,500 to fund the Trust without receiving any consideration for that transfer. At the time (1986), the Debtor was insolvent and the Debtor has remained insolvent ever since. The Debtor served as the sole director of the Corporation and trustee of the Trust until sometime in 2006 when he resigned both positions on the advice of his legal counsel.

The Debtor allegedly withdrew money (or used the Corporation's accounts) to pay for virtually all of his personal and family living expenses, including over $1 million of personal legal fees. The Corporation even owned the Debtor's family residence. (Complaint, ¶ 19.) This bankruptcy was filed as a voluntary petition under chapter 7 on May 3, 2007.

**The Adversary Proceeding.**

This adversary proceeding was filed on September 22, 2008. The original complaint sought relief under the "alter ego" theory. That complaint was dismissed without prejudice on the Mr. C Defendants' motion after court determined that the first (alter ego) claim failed to state a claim for relief. This represents the Trustee's second attempt to plead a claim for relief under the "alter ego" theory.

The Trustee alleges that both the Corporation and the Trust were created to shield the Debtor's assets from his creditors. The Complaint is separated into four claims for relief. In the first claim, the Trustee pleads, *inter alia*, that the Debtor created and used the Corporation in bad faith, commingled his assets with the Corporation, and failed to observe the corporate formalities, rendering the Corporation "as a mere shell, instrumentality, and conduit through which debtor carried on his business . . . ." (Complaint, ¶ 26.)[2] The Trustee pleads that the Corporation and the Trust "were in fact sham entities which Debtor treated as his

_____

[2]The Trustee pleads virtually the same allegations against the Trust. (Complaint, ¶ 27.) However, this memorandum focuses solely on the Trustee's claims for relief against the Corporation because the Trust has not been served and is not a defendant in this adversary proceeding.

own with the knowledge and consent of each of the Defendants. (Complaint, ¶ 26.) Based thereon, the Trustee contends that the assets of the Corporation actually belonged to the Debtor at the commencement of the case.

The second claim for relief is derived from the first claim. The Trustee alleges that the Defendant Children raided the assets of the Corporation after the Debtor resigned his position as a director of the Corporation in 2006. He contends that the Defendant Children violated a "confidential relationship" (without alleging the basis for that relationship) and prays for the imposition of a constructive trust on all of those unidentified assets.[3]

The third claim for relief is again derived from the first and the second claims for relief. It is predicated on the Trustee's conclusion that the assets of the Corporation always belonged to the Debtor. The Trustee prays for an accounting of all assets allegedly "raided" from the Corporation by the Defendant Children.

The fourth claim for relief is a fraudulent conveyance claim brought under California's Uniform Fraudulent Transfer Act (Cal.Civ.Code § 3439-3439.12; the "UFTA"). Without identifying any specific transfers made after 1986, the Trustee contends that each of the "capital and asset contributions" which the Debtor transferred to the Corporation, from 1986 to the commencement of the bankruptcy case, was made with "actual intent to hinder, delay or defraud Debtor's creditors." (Complaint, ¶ 39.) He also alleges that (1) the Debtor was insolvent at the time each of the transfers was made, (2) the Debtor did not receive reasonably equivalent value for the transfers, and (3) the transfers rendered the Debtor unable to pay his debts as they came due. (Complaint, ¶ 41.) The Trustee prays that all of said

---

[3]The Trustee also alleges, without specifics, that the Corporation owes the Debtor a "substantial severance package." (Complaint, ¶¶ 31 & 32.) If this is true, then the Debtor's "severance package" would be an asset of this bankruptcy estate. However, the Complaint does not pray for enforcement of any agreement to pay a "severance package" and that issue is not before the court. The Complaint is otherwise silent with regard to how the Corporation compensated the Debtor for services rendered.

6

1    unidentified transfers be returned to the bankruptcy estate under the UFTA.[4]

2    **Issues Presented.**

3        Based on the "alter ego" doctrine and general "equitable considerations," the

4    Trustee prays that the Corporation should be totally dissolved and disregarded, *ab*

5    *initio*, such that all of the assets in the Corporation would be deemed "property" of

6    the bankruptcy estate. Alternatively, the Trustee seeks to recover every asset

7    transferred to the Corporation since its inception under the UFTA. The Mr. C

8    Defendants contend that the "alter ego" doctrine is not applicable to the facts of this

9    case. The Mr. C Defendants also contend that the UFTA claims are barred by the

10   seven-year statute of limitations. Based thereon, they move to dismiss the

11   Complaint under Rule 12(b)(6) on the grounds that it fails to state a claim for relief.

12   **Analysis and Conclusions of Law.**

13       **The Bankruptcy Estate.** Under Bankruptcy Code § 541(a), the

14   commencement of a bankruptcy case creates an estate comprised of specific

15   categories of property, wherever located and by whomever held. Under § 704, the

16   Trustee has authority to collect and administer the property of the estate. Property

17   of the estate includes "all legal or equitable interests of the debtor in property as of

18   the commencement of the case." § 541(a)(1). "Property of the estate" does not

19   include "any power that the debtor may exercise solely for the benefit of an entity

20   other than the debtor." § 541(b)(1).

21       The trustee in chapter 7 stands in the shoes of the debtor. With a few

22   enumerated exceptions, he holds all of the property and rights of the debtor. The

23   bankruptcy court must look to state law to determine what property interest the

24

25   _____

26   [4]The Trustee does not assert any fraudulent transfer claims under § 548 and relies solely
     upon the Trustee's derivative right as a hypothetical creditor under § 544 to pursue a state law
27   claim under the UFTA. From this, the court infers that all of the alleged "fraudulent transfers"
     were made or incurred more than two years before commencement of this bankruptcy case.
28   § 548(a)(1).

7

1    bankruptcy estate may hold. *Keller v. Keller (In re Keller)*, 185 B.R. 796, 800 (9th

2    Cir. BAP 1995), citing *Butner v. United States*, 440 U.S. 48, 55 (1979). The

3    bankruptcy trustee has no greater rights than the debtor in whose shoes he stands.

4    *Id.* at 800-01, citing *Matter of Paderewski*, 564 F.2d 1353, 1356 (9th Cir. 1977). For

5    purposes of this adversary proceeding, property of the bankruptcy estate also

6    includes any interest in property that the Trustee is able to acquire through the

7    exercise of his avoiding powers found specifically in §§ 544 & 550.[5] § 541(a)(3).

8        Here, it is clear from the Complaint that the Debtor did not hold any direct

9    legal or equitable interest in the Corporation at the commencement of the case. The

10   Complaint acknowledges that the Corporation was formed and existed as a

11   Corporation under California Law. At all times since its formation in 1986, the

12   shares of stock of the Corporation were held by the Trust. The Debtor served as a

13   director of the Corporation until he resigned in 2006, but that did not give the

14   Debtor any interest in the assets of the Corporation and his "director" powers would

15   not have been property of the estate even if he had not resigned. § 541(b)(1).

16       There is nothing in the Complaint to suggest that the Corporation was not

17   properly formed or that it has ever been properly dissolved. However, the Trustee

18   wants this court to declare that the Corporation does not exist and that the

19   _____

20   [5]Section 550 provides the remedies for the Trustee's avoiding powers under § 544.
     It states in pertinent part:

21

22       Liability of transferee of avoided transfer

23       (a) Except as otherwise provided in this section, to the extent that a transfer is
         avoided under section 544 . . . of this title, the trustee may recover, for the benefit
24       of the estate, the property transferred, or, if the court so orders, the value of such
         property, from–
25

26       (1) the initial transferee of such transfer or the entity for whose benefit such
         transfer was made; or
27

28       (2) any immediate or mediate transferee of such initial transferee.

                                           8

1    bankruptcy estate is the actual owner of all of the Corporation's assets. California

2    has a definite statutory scheme for the dissolution of a corporation formed under

3    California law. Dissolution of a corporation requires action by the shareholders or

4    directors.[6] Here, the Trustee holds the powers of neither.

5        Since the Corporation was not owned by the Debtor at the commencement of

6    the case, the Complaint does not allege any basis upon which the court could

7    judicially dissolve the Corporation and simply declare the bankruptcy estate to be

8    the resulting owner of its assets. Since the Trustee has no direct right to reach or

9    control any assets of the Corporation under § 541(a)(1), the court must determine if

10   the Trustee can recover any property of, or interest in the Corporation through the

11   exercise of his avoiding powers. § 541(a)(3).

12       **Application of the "Alter Ego" Doctrine.** The Mr. C Defendants move to

13   dismiss the first claim for relief based on the manner in which the Trustee seeks to

14   use the doctrine of "alter ego." The "alter ego" doctrine is a remedial doctrine by

15   which a creditor can seek to hold a third party liable for its claim. The bankruptcy

16   court must apply the law of the forum state in determining whether a corporation is

17   the alter ego of an individual. *Securities and Exchange Commission v. Hickey*, 322

18   F.3d 1123, 1128 (9th Cir. 2003) (citation omitted).

19       Under California law, an alter ego relationship may exist, "such that a

20   corporation's liabilities may be imposed on an individual, only when two conditions

21   are met: (1) '*there is such a unity of interest and ownership that the individuality, or*

22   *separateness, of the said person and corporation has ceased,*' " and (2) " 'an

23   adherence to the fiction of the separate existence of the corporation would . . .

24   sanction a fraud or promote injustice.' " *Id.* at 1128 (emphasis in original), citing

25

26       [6]By a vote of shareholders holding shares representing at least 50 percent of the voting
27   power, a corporation may voluntarily elect to wind up and dissolve. Cal.Corp.Code § 1900. A
     corporation which has no outstanding shares may dissolve by a vote of the board of directors.
28   Cal.Corp.Code § 1900.5.

9

1   *Firstmark Capital Corp. v. Hempel Fin. Corp.*, 859 F.2d 92, 94 (9th Cir. 1988),

2   (quoting *Wood v. Elling Corp.*, 20 Cal.3d 353 n.9 (1977).

3          There is no "litmus test" for an alter ego relationship under California law,

4   but all the California courts that have dealt with the issue have recognized two

5   general requirements: "ownership and the specter of fraud." *S.E.C. v. Hickey*, 322

6   F.3d at 1128-29 (California citations omitted).

7          Here, the first claim for relief is pled as an "alter ego" claim against the

8   Corporation, however, the "alter ego" remedy is not applicable on the facts of this

9   case. The Debtor has never owned any interest in the Corporation so there was no

10  "unity of ownership" between the Debtor and the Corporation. Further, the

11  Corporation is not a judgment debtor so there is no reason to pierce the Corporation

12  for the benefit of its creditors. Finally, the Trustee is a fiduciary for the benefit of

13  the Debtor's creditors. Although the Corporation's creditors may have hypothetical

14  claims against the Debtor for alleged misuse of the Corporation's assets, the Trustee

15  has no authority to prosecute claims for the benefit of the Corporation's creditors.

16         **Application of the "Reverse Piercing" Doctrine.** Having determined that

17  "alter ego" is not applicable to the facts as alleged, the court must determine if those

18  facts could support a claim for relief on any other cognizable theory. The corollary

19  to the "alter ego" doctrine is "reverse piercing." The doctrine of reverse piercing

20  applies when the judgment debtor is the shareholder of a corporation. It allows the

21  judgment creditor to satisfy its claim from the assets of a corporation owned by the

22  shareholder. *S.E.C. v. Hickey*, 322 F.3d at 1130 (citations omitted). When the court

23  engages in reverse piercing, it imposes the shareholder's liability directly on the

24  corporation. *Id.*

25         Like the "alter ego" doctrine, the creditor must show that the shareholder

26  failed to maintain the corporation's separateness. As a remedial doctrine, the

27  "reverse piercing" doctrine has been narrowly construed. No court has applied the

28  "reverse piercing" doctrine where there was not an ownership relationship between

10

1  the shareholder/judgment debtor and the third party corporation.  At least one

2  California court has refused to apply the "reverse piercing" doctrine altogether

3  because the third party judgment creditor already had an adequate remedy under

4  California law through judgment collection procedures and actions for conversion

5  and fraudulent conveyance.

> 6  The true issue that outside reverse piercing seeks to address is
> not the misuse of the corporate form to shield the shareholder
> 7  from personal liability.  Rather, the issue addressed by outside
> reverse piercing is the shareholder's transfer of personal assets
> 8  to the corporation to shield the assets from collection by a
> creditor of the shareholder.  In other words, outside reverse
> 9  piercing seeks to protect the judgment creditor from the
> shareholder's fraudulent transfer of assets to the corporation.
> 10  But, as explained in [*Cascade Energy and Metals Corp. v.
> Banks*, 896 F.2d 1557, 1576-77 (10th Cir. 1990) and *Floyd v.
> 11  IRS*, 151 F.3d 1295 (10th Cir. 1998)], conversion and fraudulent
> conveyance already afford judgment creditors protection in that
> 12  situation.

13  *Postal Instant Press, Inc. v. Kaswa Corporation*, 162 Cal.App.4th 1510, 1523-24

14  (2008).

15       Here, the Trustee alleges that the Debtor misused the corporate form and

16  conducted all of his personal business affairs through the Corporation.  However,

17  the Trustee's "reverse piercing" claim against the Corporation is defective for three

18  reasons.  First, the proper remedy for that situation would be through conversion and

19  fraudulent conveyance claims.  *Id.*  Second, the Trustee has not, and apparently

20  cannot, plead that the Debtor has, or ever had, any ownership interest in the

21  Corporation.  The shares of the Corporation were initially issued to the Trust and

22  have been held continuously by the Trust for about 24 years.  The lack of an

23  ownership interest is fatal to a "reverse piercing" claim.

24       The third problem lies in the purpose for which Trustee seeks to invoke

25  "reverse piercing"; the result which the Trustee seeks to achieve through this

26  adversary proceeding.  The Trustee is not seeking a determination that the assets of

27  the Corporation should be held liable for a particular debt.  Instead, the Trustee

28  seeks (1) to collapse or dissolve the Corporation, and (2) to thereby bring all of the

11

1   assets of the Corporation into this bankruptcy estate where they will be subject to the

2   jurisdiction of this court and available for administration using the powers vested in

3   the Trustee under the Bankruptcy Code.  As noted above, the state of California has

4   a statutory scheme for the dissolution of a corporation which must be instigated by

5   the shareholders or directors of the corporation.  (See footnote 6, supra.)  The

6   Trustee is neither a shareholder nor a director of the Corporation and the Trustee's

7   efforts to judicially dissolve the Corporation represent a radical extension of the

8   "reverse piercing" doctrine.

9          The Trustee contends that his "reverse piercing" claim is supported by the

10  California Supreme Court's decision in *Wood v. Elling Corp.*, 20 Cal.3d 353.  The

11  court disagrees.  The plaintiff in *Wood* had obtained a substantial judgment against

12  the defendant Wencke in a prior action based on a promissory note.  At the time,

13  Wencke was the trustee of two family trusts established for the benefit of the

14  Wencke children.  In a subsequent civil action, Wood alleged that Wencke had

15  transferred real property assets into two corporations, Elling Corp. and Adele Corp.

16  in 1969 and 1970, respectively.  However, the shares of the corporations were issued

17  to the family trusts.  Wencke did not immediately hold any interest in the

18  corporations.  Wood sought (1) to avoid the property transfers to the corporations

19  under a fraudulent conveyance theory and (2) "a declaration that the corporate

20  existences of both Elling and Adele should be disregarded for the *purpose of*

21  *ascertaining their liability* [for the prior judgment]."  20 Cal.3d at 363 (emphasis

22  added).

23         The Supreme Court affirmed the trial court's dismissal of the fraudulent

24  conveyance claim on statute of limitations grounds.  20 Cal.3d at 362.  The court

25  also affirmed dismissal of the "reverse piercing" claims against the corporations

26  because there was no unity of ownership between Wencke and the corporations,

27  "such ownership residing wholly in the two trusts created by the Wenckes for the

28  benefit of their children and Adel Wencke."  20 Cal.3d at 364-65.  The court did

12

1  remand the complaint for leave to amend the "reverse piercing" claim against the

2  trusts.  In so doing, the court stated:

3           In the circumstances of this case, however, we believe that
            plaintiff should have been given the opportunity to further
4           amend his complaint.  If it were alleged and proven that the two
            trusts in question were *themselves* alter egos of the Wenckes,
5           those trusts would essentially drop out as independent legal
            entities, and the general allegations relating to interest and
6           ownership would find support in specific allegations consistent
            with the specific allegations presently appearing in the
7           complaint.  Our review of the record in this case leads us to
            believe that plaintiff may be able to make and support such
8           further allegations; he should be given the opportunity to do so.

9  *Id.* at 365 (emphasis in original).

10         Based on the above language in *Wood v. Elling*, the Trustee contends that the

11  doctrines of alter ego and reverse piercing can be used to terminate and collapse the

12  Corporation.  However, the Trustee completely misconstrues the holding in *Wood v.*

13  *Elling*.  The plaintiff in *Wood v. Elling* never sought the relief which the Trustee

14  seeks here; dissolution of a corporation.  He merely sought a way to make the two

15  corporations liable for his judgment.  Nothing in the *Wood v. Elling* decision

16  suggests that all of the assets of the corporations could be merged or substantively

17  consolidated with the assets of the Wenckes, or liquidated by a bankruptcy trustee,

18  for the general benefit of all of the Wenckes' creditors.

19         Based on the Trustee's inability to plead any ownership interest between the

20  Debtor and the Corporation, and his inability to dissolve the Corporation under

21  applicable law, this court is satisfied that the Trustee cannot plead any facts to

22  support the "reverse piercing" claim, or to achieve the result contemplated in the

23  first claim for relief.  Under California law, the Trustee has an adequate remedy

24  through the established "fraudulent conveyance" theory.

25         **Application of the UFTA.**  One of the Trustee's powers is the right to

26  prosecute claims which a hypothetical creditor could prosecute under California law,

27

28

13

specifically here the UFTA.[7]  § 544.  In the fourth claim for relief, the Trustee seeks

to recover all property which the Debtor ever transferred to the Corporation dating

back to its creation in 1986.  He contends that all such transfers were fraudulent

transfers made either without consideration while the Debtor was insolvent, or made

to hinder, delay and defraud the Debtor's creditors, or both.  The Mr. C Defendants

raise the obvious statute of limitations defense.  They contend that the seven-year

statute of limitations codified in Cal.Civ.Code § 3439.09(c) applies.[8]  The court

---

[7]Civil Code § 3439.04 states in pertinent part:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation as follows:

(1) With actual intent to hinder, delay, or defraud any creditor of the debtor.

(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either:

(A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

(B) Intended to incur or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

Civil Code § 3439.05 states:

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

[8]Cal.Civ.Code § 3439.09 states:

A cause of action with respect to a fraudulent transfer or obligation under this chapter *is extinguished* unless action is brought pursuant to subdivision (a) of Section 3439.07 or levy made as provided in subdivision (b) or (c) of Section 3439.07:

(continued . . .)

14

1    agrees.

2            The Trustee argues that he did not obtain his status as a "hypothetical

3    creditor" until the bankruptcy petition was filed.  Based on that, he contends that the

4    statute of limitations did not begin to run until the bankruptcy case was filed.  The

5    Trustee relies on *Cortez v. Vogt*, 52 Cal.App.4th 917 (1997), to support his theory

6    that the statute of limitations under the UFTA is somehow not applicable to a

7    bankruptcy trustee.  The issue in *Cortez* bears no resemblance to the issue in this

8    case.  In *Cortez*, the plaintiff brought an action against two corporations for

9    wrongful termination.  During the pendency of an appeal, the defendant

10    corporations' assets were transferred to another corporation that did not assume the

11    potential liability for the judgment.  Because of the appeal, a final judgment in the

12    plaintiff's favor was not entered until more than four years after the transfer of

13    assets occurred.   When the plaintiff sought to recover the assets under the UFTA,

14    the trial court granted summary judgment against the plaintiff based on a statute of

15    limitations prescribed in Cal.Civ.Code § 3439.09.  The court of appeals reversed,

16    stating:

17    / / /

18    / / /

19    / / /

20    / / /

21    _____

22    (continued . . .)
         (a) Under paragraph (1) of subdivision (a) of Section 3439.04, within four years after the
23    transfer was made or the obligation was incurred or, if later, within one year after the transfer or
         obligation was or could reasonably have been discovered by the claimant.
24

25            (b) Under paragraph (2) of subdivision (a) of Section 3439.04 or Section 3439.05, within
         four years after the transfer was made or the obligation was incurred.
26

27            (c) *Notwithstanding any other provision of law, a cause of action with respect to a
         fraudulent transfer or obligation is extinguished if no action is brought or levy made within*
28    *seven years after the transfer was made or the obligation was incurred.*  (Emphasis added.)

15

> In the context of the scheme of law of which section 3934.09 is a part, *where an alleged fraudulent transfer occurs while an action seeking to establish the underlying liability is pending,* and where a judgment establishing the liability later becomes final, we construe the four-year limitation period . . . to accommodate a tolling until the underlying liability becomes fixed by a final judgment. Thus, in this case the four-year period did not commence to run until the judgment became final . . . .

*Id*. at 920 (emphasis added).

Here, the Trustee is not seeking to toll the statute of limitations based on some pending prepetition litigation. He seeks to redefine the law which determines when the statute of limitations should start to run for a bankruptcy trustee. The *Cortez* court, at 926 n.6, adopts its own description of the UFTA as laid out in *Monastra v. Konica Business Machines, U.S.A., Inc.*, 43 Cal.App.4th 1628, 1635-36 (1996). In *Monastra*, the court described the seven-year maximum statute of limitations under § 3439.09 as follows:

> The statute of limitations for an action for relief from a transfer proscribed under section 3439.04, subdivision a [transfer made with intent to defraud creditor], is four years after the transfer or, if later, one year after the transfer was or could reasonably have been discovered by the claimant, *up to a maximum of seven years after the transfer* . . . .

*Id*. at 1645 (emphasis added).

The Trustee suggests an interpretation of the applicable law which would effectively abolish § 3439.09(c) once a chapter 7 bankruptcy is filed. The Trustee parses § 3439.09(c) and contends that the term "within seven years after the transfer was made" is a separate temporal determination than the term "the obligation was incurred." He argues that the date the "obligation was incurred" in this case was the date the Trustee was appointed and took on the powers of a hypothetical creditor under § 544.

The Trustee also argues that the seven-year limitations period in § 3439.09(c) is applicable only to actions brought under the UFTA and that it does not limit actions brought under common law fraud; that actions under common law fraud are

16

1  subject to a three-year statute which begins only upon discovery by the creditor.

2  The Trustee cites *Macedo v. Bosio*, 86 Cal.App.4th 1044 (2001), to support his

3  theory of a statute of "nonlimitations."[9]  *Macedo* was a fraudulent transfer case in

4  which the defendants transferred their interest in real property to a revocable trust in

5  1993.  A judgment had been entered against the defendants in 1996 and, in 1999, a

6  court entered a contribution order against them.  Their only defense was the statute

7  of limitations: the transfer occurred in 1993, and the action to avoid it was brought

8  in 1999, six years later.  The trial court entered a summary judgment for the

9  defendants.  On appeal, the court reversed, following the reasoning of *Cortez*, that

10 the UFTA is a cumulative and additional remedy and that such claims may be

11 brought under the common law as well.  Notwithstanding Cal.Civ.Code § 3439.09,

12 the plaintiffs could bring an action within three years after the judgment was

13 obtained.  The *Macedo* court did not determine that an action could be brought

14 beyond the seven-year statute in § 3934.09(c).  Indeed, in *dicta*, the court suggested

15 just the opposite, *Macedo v. Bosio*, 86 Cal.App.4th at 1051 n.4.[10]

16

17 _____

18 [9]The Trustee cites *Macedo* for the proposition that: "In a common law cause of action, the
   applicable statute of limitation is CCP § 338, and the cause of action accrues not when the
19 fraudulent transfer occurs, but when the judgment against the debtor is secured (or maybe even
   later, depending upon the belated discovery issue").  The Trustee did not deem it necessary to
20 include the language at 1051 n.4  which was picked up and adopted by the Ninth Circuit in
   *Slatkin,* which makes it clear that the *Macedo* court interpreted the seven-year statute of
21 limitations of Cal.Civ.Code § 3439.09(c) to apply to common law causes of action as well as
22 actions brought pursuant to UFTA.

23 [10]In *Macedo* the court stated: "Although . . . we agree with appellant's basic premise that
   section 3439.09 subdivision (a) is not the exclusive statute of limitations applicable to actions to
24 set aside fraudulent transfers, we disagree that section 3439.09 subdivision (c) supports that
25 conclusion.  We think its meaning is far more limited, to wit, that *even if* belated discovery can
   be pleaded and proven as suggested in section 3439.09 subdivision (a), in any event the
26 maximum elapsed time for a suit *under either the UFTA or otherwise is seven years after the*
27 *transfer.* . . . [W]e think that, by its use of the term '[n]otwithstanding any other provision of
   law,' the Legislature clearly meant to provide an overarching, all-embracing maximum time
28                                                                    (continued . . .)

17

1     The reasoning in *Macedo* was subsequently adopted by the Ninth Circuit

2   Court of Appeals in the bankruptcy case, *Slatkin v. Neilson (In re Slatkin)*, 222 Fed.

3   Appx. 545 (9th Cir. 2007). In *Slatkin*, the court cited Cal.Civ.Code §3439.09(c) and

4   stated:

5               Because this statute of repose "provide[s] an
            overarching, all-embracing maximum time period to
6           attack a fraudulent transfer," it extinguished the
            Trustee's ability to reach the transfers that occurred
7           more than seven years prior to the date upon which the
            Trustee filed the claim . . . .
8

9   *Id*. at 547 (citation omitted).

10     It has been firmly established in both California state law and in the Ninth

11   Circuit that the powers of a bankruptcy trustee in California who seeks to avoid a

12   fraudulent transfer under either the UFTA or the common law, are limited to those

13   transfers which occur not more than seven years prior to the date that the trustee is

14   appointed. *See In re Slatkin*, 222 Fed.Appx. at 547.

15   **Conclusion.**

16     Based on the foregoing, the Mr. C Defendants' Motion will be granted.

17   Based on the facts alleged in the Complaint, the court is persuaded that the Trustee

18   can plead no other set of facts to state a claim under the "alter ego" and "reverse

19   piercing" theories. Further amendment of those claims would be futile.

20   Accordingly, the first claim for relief will be dismissed with prejudice to the extent

21   the Trustee seeks to dissolve the Corporation and take control of its assets based on

22   the "alter ego" and "reverse piercing" doctrines. To the extent that the second and

23   third claims for relief are derivatives of the first claim, they too will be dismissed

24   without leave to amend. Based on the allegations in the Complaint, the court is not

25   yet persuaded that the Trustee cannot plead a claim under the UFTA based on

26   _____

27   (continued . . .)

28   period to attack a fraudulent transfer, no matter whether brought under the UFTA or otherwise."
    *Macedo v. Bosio*, 86 Cal.App.4th at 1051 n.4 (emphasis in original).

18

1   fraudulent transfers occurring within the applicable statute of limitation.

2   Accordingly, the fourth claim for relief will be dismissed with leave to amend

3   consistent with this memorandum.

4        Dated: January _____, 2010

5

6

7        W. Richard Lee
     United States Bankruptcy Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

19